IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 8, 2001 Session

## STATE COUNCIL OF TENNESSEE, JUNIOR ORDER OF UNITED AMERICAN MECHANICS
### v.
## WILLIAM BOYD, BILLY LOVELL, JOHN PETTY, ROBERT McCLAIN and J.D. RUNIONS

**Appeal from the Chancery Court for Maury County**
**No. 98-076     Stella L. Hargrove, Chancellor**

---

**No. M2000-01652-COA-R3-CV - Filed January 15, 2002**

---

This case involves an action to quiet title between the state chapter of a national fraternal organization and the members of a local chapter. The organization's constitution provides that, upon the dissolution of a local chapter, all acquired property becomes the property of the state chapter. After receiving a letter from three officers of the local chapter expressing their intent to surrender its charter, the state chapter sent a letter to all known members of the local chapter calling a meeting to discuss the future of the chapter. At a second meeting, three members attended; two of the members abstained until a vote of the entire membership could be taken while the third member voted to remain dissolved. Thereafter, the state chapter announced that the local chapter was dissolved and ordered the local chapter to surrender its bank account and had the door to the lodge padlocked. The state chapter then brought a lawsuit to quiet title. The defendant members disputed that their chapter had been properly dissolved. The trial court held that the dissolution of the local chapter and surrender of the chapter's premises and bank account by its officers was improper, dismissed the state chapter's petition to quiet title and ordered the return of the surrendered funds. From this decision, the state chapter now appeals. We affirm.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W. S. and ALAN E. HIGHERS, J., joined.

Michael E. Gilmer, Columbia, Tennessee, for the appellant, State Council of Tennessee, Junior Order of United American Mechanics.

Barton E. Kelley, Columbia, Tennessee, for the appellee, William Boyd.

**OPINION**

This is a quiet title action. The Junior Order of United American Mechanics ("Junior Order") is a national fraternal organization, operating in Tennessee through both a state chapter and several local chapters. The Appellant, State Council of Tennessee ("State Council"), is the state chapter of the Junior Order and is organized under the laws of Tennessee as a non-profit corporation. Under their national and state charters, the State Council is authorized to issue charters to junior councils organized at the local level. Appellees William Boyd, Billy Lovell, John Petty, Robert McClain, and J.D. Runions are several members of Local Council 256 ("Members"), a chapter of the Junior Order located in Mt. Pleasant, Tennessee and operating under the jurisdiction of the State Council.

State and local chapters of the Junior Order are authorized and governed by both the national organization's constitution and by-laws as well as the constitution and by-laws of the State Council. The Tennessee charter, Chapter XIX, Sec. 23 provides:

> All funds, moneys [sic], and property...accumulated or held by any council...shall be accumulated and held solely in trust for and as provided by the State Council, and upon the severance of a council from its relations with the State Council by disbanding, withdrawal, expulsion, dissolution, or revocation of its charter...all of said funds, moneys [sic] and property shall immediately thereafter revert to the State Council.

Prior to August 1997, Local Council 256 owned property and a meeting lodge located in Mt. Pleasant, Tennessee. Local Council 256 also held funds of over $19,000 in a bank account.

In June 1997, the State Council received a letter signed by three member-officers of Local Council 256 which stated the intention of the Local Council to surrender its charter.[1] The letter stated that the Local Council was turning over its meeting lodge and the funds held in its bank account to the State Council.

The State Council decided to determine whether there was any interest in continuing Local Council 256. The State Council first called a meeting of the membership for July 10, 1997, in order to conduct a vote of the members on whether to dissolve the council. When only one member attended the meeting, a second meeting was scheduled for August 22, 1997. At this second meeting, only three members attended. At the meeting, a representative of the State Council, Van Stokes, did not indicate to the members that they would be permitted to continue on as Local Council 256 and recruit new members, because Stokes believed that the Local Council had already been dissolved by virtue of the letter. Rather, the members in attendance were asked whether they wished to merge with the Columbia chapter of the Junior Order or to remain dissolved permanently. Member William Boyd asked that the other members take no action either to join with the other council or

---

[1] The letter indicated that the actual charter could not be located but testimony was presented that it was not necessary to surrender the physical charter in order to dissolve the council.

to surrender the charter until a vote of the entire membership could be taken. One of the three members in attendance voted to remain dissolved, while Boyd and the other member abstained. After this vote, Van Stokes declared Local Council 256 to be dissolved. The State Council then ordered Local Council 256 to remit the funds held in its bank account. The State Council later padlocked the door to the meeting lodge.

On February 11, 1998, the State Council filed a Petition to Quiet Title to the property and the meeting lodge, naming as defendants all known members of Local Council 256. The Answer filed by the Members denied the authority of the officers to unilaterally dissolve the chapter and surrender the premises. The Members also counter-claimed against the State Council, seeking return of the funds which had been turned over to the State Council.

At the trial, much of the evidence pertained to whether Van Stokes, as representative of the State Council, had the authority under the organization's charter and by-laws to dissolve the Local Council. The Members presented evidence that the procedures for revoking a local council's charter required the filing of formal charges as well as ten days' notice and a hearing before the state judiciary of the organization.

The State Council took the position at trial that, regardless of any action taken by Stokes or the State Council, the Local Council was dissolved by the letter submitted by the officers of Local Council and the subsequent inaction by its members. In response, the Members presented evidence showing that the officers who signed the letter stating the Local Council's intent to surrender its charter were acting outside their authority. The evidence indicated that the State Council received quarterly reports showing any new members in Local Council 256 and that the reports were usually signed by the officers. The Members argued that the fact that the State Council knew the names of the officers and members of Local Council 256 was significant, in light of testimony that one of the signers had never been elected as an officer and may not have been a member, but rather signed his own name in the place of a deceased relative who had been the recording secretary. Another officer admitted that he mistakenly signed the letter without realizing that a meeting was necessary before the Local Council could surrender the charter. The Members also presented testimony that several members were unable to attend the second meeting because of reasons such as illness, and that the State Council was aware of this.

Contrary to what was stated in the letter, the Members testified that they desired to continue on as a local chapter. At the time of the letter stating the intent to surrender the charter, Local Council 256 was in compliance with all requirements of the national and state charters and by-laws. The letter was apparently sent without any discussion among the general membership of Local Council 256 and no vote was taken authorizing the officers to surrender the charter.[2] The testimony

---

[2] The constitutions and by-laws of the National and State Councils do not provide that a vote of the local council is necessary to surrender the charter. In fact, while they do provide a procedure for the State Council to revoke the charter of a local council, the laws fail to provide any means by which a local council may dissolve itself. Rather, the State Council by-laws state that, "Councils are prohibited from disbanding or publishing notice calling on its
(continued...)

-3-

indicated that Stokes, the representative of the State Council, was made aware during a subsequent conversation with a member of Local Council 256 that the general membership had never voted to dissolve the chapter. However, the members of Local Council 256 failed to take any formal action to inform the State Council that the letter was not authorized by the general membership and express to the State Council their desire to continue the local chapter.

At the conclusion of the trial, the trial court entered findings of fact and conclusions of law. The trial court found that the actions of the State Council did not comply with the procedures required for the dissolution of a local chapter. The trial judge concluded that the surrender of the charter was done without notice, discussion and a vote of the Local Council and was, therefore, not binding on the members of Local Council 256. The trial court dismissed the petition to quiet title filed by the State Council and ordered the return of the surrendered funds of the Local Council. From this order, the State Council now appeals.

On appeal, the State Council argues that, because the Members failed to complain of the actions of their elected officers at either of the two council meetings or through appeal to the state judiciary of the Junior Order, they are now estopped from objecting to those actions. The State Council also argues that the Members failed to exhaust their internal remedies and that consequently the trial court lacked subject matter jurisdiction over the case. The State Council does not appeal the trial court's factual finding that the State Council had not complied with the required procedures for the dissolution of a local chapter.

Since this case was tried by the trial court sitting without a jury, we review the trial court's factual findings *de novo* accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. **Campbell v. Florida Steel Corp.**, 919 S.W.2d 26, 35 (Tenn. 1996); Tenn. R. App. P. 13(d). The trial court's legal conclusions are reviewed *de novo* with no presumption of correctness. **Campbell**, 919 S.W.2d at 35.

The State Council first argues, under an estoppel theory, that the Members are bound by the action taken by their officers in surrendering the charter of Local Council No. 256. The State Council cites cases finding that the silence or inaction of one party may, in certain circumstances, constitute a ratification of a contract under theories of estoppel. **See Furnish v. Burge**, 54 S.W. 90, 92 (Tenn. Ch. App. 1899). However, in situations in which a party fails to object to actions taken by a third party on his behalf, courts have frequently decided the issue under the doctrine of apparent authority. **See White v. Methodist Hosp. S.**, 844 S.W.2d 642, 646 (Tenn. Ct. App. 1992) (finding that apparent agency is essentially agency by estoppel). It is unclear whether the State Council adequately raised this issue to the trial court; nevertheless, we will address the issue on appeal.

---

[2](...continued)
members to a meeting for that purpose." Laws of State Council of the Junior Order, United American Mechanics of the State of Tennessee, Inc. Chapter XIX Section 1. However, the testimony of the state secretary, James Workman, indicates that councils are, in fact, permitted to disband and that a vote of the local council is necessary.

Whether proceeding under a theory of apparent agency or estoppel, the plaintiff must show that he relied to his detriment on the representations of the defendant without knowledge of the true facts. *See White*, 844 S.W.2d at 646 (finding that elements of apparent agency include good faith belief in the agent's authority and detrimental reliance); *Werne v. Sanderson*, 954 S.W.2d 742, 746 (Tenn. Ct. App. 1997) ("Estoppel requires as a minimum (1) reliance upon the statement or actions of another without opportunity to know the truth and (2) action based on that reliance which results in detriment to the one acting."). The element of detrimental reliance requires the plaintiff to prove a prejudicial change in the plaintiff's position in reliance on the defendant's representation. *Provident Washington Ins. Co. v. Reese*, 373 S.W.2d 613, 615 (Tenn. 1964). In this case, the State Council simply ordered that Local Council 256 turn over its bank account and then padlocked the premises. The facts do not indicate that the State Council took any action to its detriment in reliance on the representations in the letter.

Moreover, there was evidence from which the trial court could conclude that the State Council knew the true facts surrounding the letter before taking any action in reliance on the representations of the officers. As noted in *Rambeau v. Farris*, "[i]t is essential to estoppel that the person claiming it was himself not only destitute of knowledge of the facts, but without available means of obtaining such knowledge, for there can be no estoppel where both parties have the same means of ascertaining the truth." 212 S.W.2d 359, 361 (1948) (quoting *Hankins v. Waddell*, 167 S.W.2d 694, 696 (Tenn. Ct. App. 1942). Prior to its seizure of the Local Council's funds and its padlocking of the lodge, the State Council was aware that the constitutions and by-laws of the National Council and the State Council do not give authority to the local councils' officers to dissolve their organizations. The fact that the writers of the letter were officers, in and of itself, does not clothe them with the apparent authority to dissolve the entire organization. The State Council was aware that, according to its own laws, a vote of the local membership was required. Moreover, testimony was presented at trial that one of the signers of the letter had never been elected and may not have been a member and, instead, signed his own name in place of his deceased relative. The State Council was familiar with the names and signatures of the officers of Local Council 256 and had the means to verify the signatures on the letter. Therefore, there was evidence from which the trial court could conclude that the State Council knew or should have known that one of the signers of the letter was not an officer of the Local Council 256. Under these circumstances, the trial court could conclude that any reliance the State Council placed on the letter or the Members' subsequent silence was unwarranted. The argument of the State Council based on either estoppel or apparent agency is not applicable.

The State Council also argues that the Members were required to exhaust all internal remedies before pursuing legal action, and that their failure to do so deprived the trial court of subject matter jurisdiction. The State Council relies on the case of *Barthell v. Zachman*, 36 S.W.2d 886, 887 (Tenn. 1931). *See also Wilson v. Miller*, 250 S.W. 2d 575, 577 (Tenn. 1952). In *Barthell*, the plaintiffs were members of a local lodge who were charged with misconduct by the national organization, ostensibly for the purpose of depriving the plaintiffs of their lodge site. *Barthell*, at 886-887. A trial commission was appointed by the grand president of the organization to investigate the alleged misconduct. *Id.* The plaintiffs filed a lawsuit and were granted a preliminary injunction restraining the actions of the trial commission. *Id.* at 887. The defendants moved to dissolve the

injunction, and the plaintiffs apparently conceded that an injunction against the trial commission was "the only remedial part of their suit." ***Id.*** The trial court then dissolved the injunction. ***Id.***

On appeal, the Tennessee Supreme Court affirmed the trial court's dissolution of the injunction against the organization's appointed trial commission. The Court stated:

> Where tribunals are provided by the constitution and the laws of a fraternal society, which unequivocally require . . . that members first exhaust their remedies within the society before litigating their contentions in the courts, remedies within the society must be exhausted before the members can resort to the courts. Especially is this true where matters of discipline and internal regulation are involved. . . .
>
> The society must, of course, observe its laws and apply them in good faith. It could not use its power oppressively and arbitrarily to the end of depriving a member or members of a property right, a beneficial pecuniary right, or a contractual right. Where the laws of the order are fraudulently and oppressively used to the injury of the rights of an aggrieved member, the courts will hear his complaint, and, upon proper showing of oppression or fraud or excess of jurisdiction, assure him relief. . . .

***Id.*** (citations omitted). Thus, in ***Barthell***, the Court held that members of a fraternal organization may initiate legal action where there is a showing that the organization deprived the members of a property right or a beneficiary pecuniary right by acting in excess of its jurisdiction. In ***Barthell***, the plaintiff members sought to enjoin the organization from utilizing its internal remedies, and the trial court declined to do so. In contrast, in this case, the State Council initiated the lawsuit by filing a petition to quiet title. Moreover, the Members put on evidence indicating that the State Council acted oppressively and in excess of its jurisdiction, by padlocking the lodge of the Local Council and seizing its funds without obtaining a vote of the local membership on the issue of dissolution. The evidence does not preponderate against the trial court's conclusion that the State Council acted contrary to its own laws and procedures, and in excess of its jurisdiction. Under these circumstances, the trial court did not err in dismissing the State Council's petition to quiet title and in ordering the return of the funds of the Local Council.

The decision of the trial court is affirmed. Costs are taxed to appellant, State Council of Tennessee, Junior Order of United American Mechanics, and its surety, for which execution may issue if necessary.

---
HOLLY KIRBY LILLARD, JUDGE